IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CV-49-FL

| | | |
|---|---|---|
| DAVINA RICKETTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WAKE COUNTY PUBLIC SCHOOL | ) | |
| SYSTEM; WAKE COUNTY BOARD OF | ) | |
| EDUCATION; KEITH SUTTON, current | ) | |
| Board Member; CHRISTINE KUSHNER, | ) | |
| current Board Member; JAMES MARTIN, | ) | |
| current Board Member; ROXIE CASH, | ) | |
| current Board Member; MONIKA | ) | |
| JOHNSON-HOSTLER, current Board | ) | |
| Member; LINDSAY MAHAFFEY, current | ) | |
| Board Member; TOM BENTON, former | ) | |
| Board Member, in his individual capacity; | ) | |
| BILL FLETCHER, former Board Member, | ) | |
| in his individual capacity; SUSAN EVANS, | ) | |
| former Board Member, in her individual | ) | ORDER |
| capacity; KEVIN HILL, former Board | ) | |
| Member, in his individual capacity; JAMES | ) | |
| MERRILL, former Superintendent, in his | ) | |
| individual capacity; CATHY MOORE, | ) | |
| former Deputy Superintendent for School | ) | |
| Performance and current Superintendent, in | ) | |
| her individual capacity; MARVIN | ) | |
| CONNELLY, former Chief of Staff, in his | ) | |
| individual capacity; DANNY BARNES, | ) | |
| former Area Superintendent, in his | ) | |
| individual capacity; RODNEY TRICE, | ) | |
| Assistant Superintendent for Equity Affairs, | ) | |
| in his individual capacity; SCOTT LYONS, | ) | |
| former Principal of Enloe and current | ) | |
| Principal of Heritage High School, in his | ) | |
| individual capacity; MONICA SAWYER, | ) | |
| Asst. Principal of Enloe High School, in her | ) | |
| individual capacity; GEORGE BARILICH, | ) | |
| 2016 Student Council Election Advisor and | ) | |

current teacher, in his individual capacity;      )
TRUDY PRICE-O'NEIL, Editor of Enloe            )
Newspaper, in her individual capacity,              )
                                                                      )
                              Defendants.                )

This matter is before the court on defendants' motion to dismiss for failure to serve and for failure to state a claim (DE 64). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this race discrimination action pro se on February 2, 2021, against organizations and individuals related to her former high school, asserting violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq, ("Title VI") and the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.[1] Plaintiff seeks injunctive relief and compensatory and punitive damages.

Plaintiff filed the operative amended complaint, as a matter of course, on February 24, 2021, asserting the same claims with additional factual allegations. Defendants filed the instant motion to dismiss thereafter, relying upon affidavit of defendant Keith Sutton ("Sutton"), chair of defendant Wake County Board of Education ("Board"). Plaintiff responded in opposition, relying upon affidavit of Elois Johnson, and defendants replied.

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows.[2]

---

[1]      Plaintiff, in her response to the instant motion, withdraws her claims pursuant to 31 U.S.C. § 6711. (Pl.'s Resp. (DE 68) at 2; Pl.'s Mem. Supp. Resp. (DE 69) at 2 n.2).

[2]      Hereinafter, all references to the complaint or "Compl." in citations are to the operative amended complaint (DE 10).

2

Plaintiff is a former student of Enloe High School ("Enloe"), which is a part of Wake County Public School System, controlled and supervised by defendant Board. The individual defendants are comprised of employees of the Wake County Public School System, Enloe, and the Board as well as former and current members of the Board. The events underlying plaintiff's claims took place "in 2016 surrounding the [s]tudent [c]ouncil elections, when [p]laintiff was a sophomore and a minor." (Compl. ¶ 1).

In February 2016, a "preliminary election" for Enloe's student council was slated for March 4, 2016, with a planned ballot for all the rising classes, including the rising junior class as relevant to plaintiff's claims. (Id. ¶ 36). Defendant George Barilich ("Barilich"), an English teacher at Enloe, was appointed to oversee this election, with assistance from defendant Monica Sawyer ("Sawyer"), the assistant principal. Plaintiff submitted an application to run in the election, and her candidacy was approved.

Once the campaign process began, plaintiff became aware of a "Twitter account[] with the appearance of representing Enloe." (Id. ¶ 39). The account allegedly posted polls and endorsements regarding the student council election, but these omitted plaintiff's name. Plaintiff was able to determine that the account belonged to "Caucasian [s]tudent [c]ouncil members." (Id.). Around the same time, "[p]laintiff's campaign posters and promotional book tags . . . were ripped, defaced, and thrown." (Id.).

On the day of the election, the vice president of the student council, who was allegedly involved in running the election, informed candidates that there were "technical difficulties with the voting website" and that voting would be suspended. (Id. ¶ 40). According to the complaint, the vice president had, in fact, never created the requisite ballots on the voting website, and it was only after the announcement to the candidates that Barilich made the ballot and set up the voting website. The

next day voting began.  However, all four "of the . . . African-American candidates" for the junior class, including plaintiff, allegedly had their names omitted from the correct ballot.  (Id. ¶ 43).  According to the complaint, plaintiff's name was included, incorrectly, on the sophomore class's ballot.

Plaintiff confronted defendant Sawyer and alleged discrimination.  Defendant Sawyer allegedly asserted that plaintiff's name had been left off because her candidacy application indicated she was running for a position within the rising sophomore class.  Plaintiff explained that she had corrected this mistake by communication with the vice president of the student council the week before the election, which defendant Barilich confirmed.  As to the other names left off the ballot, defendant Barilich allegedly asserted that the omission was due to miscommunications in the transition from the old voting website to the new.

According to the complaint, a total of nine students were left off or were put on the wrong ballot, including the four African-American candidates.  Plaintiff asserts that, contrary to defendants' calculation that "3 African Americans, 2 Caucasian, 1 Hispanic, [and] 1 Asian" were left off, only non-Caucasian individuals were left off because one Caucasian student counted by Barilich "was Jewish" and the other had not appeared or been involved in any candidacy communications or activities prior.  (Id. ¶ 46).

Plaintiff and her parents attempted to contact supervisory authorities in the Wake County Public School System to discuss this alleged discrimination, but no one ever contacted them nor, allegedly, did defendants follow their policy regarding such complaints.  Defendants are alleged to not have told the true reason that some candidates were left off and inconsistently asserted to "the public and the Enloe community" that it was a "website error" and, at later times, "student error," in

4

the form of the vice president of the student council providing an incorrect ballot to Barilich. (Id. ¶ 47).

The same day as the initial election, defendant Scott Lyons ("Lyons"), the principal of Enloe, announced that a reelection would be held and that all candidates would need to repeat the campaign process, which was contrary to plaintiff's parents requested remedy of a re-vote only. Because of the need to re-campaign and because she was the only omitted African-American student to run in the reelection, the other candidates became "ang[ry] and frustrat[ed]" with plaintiff. (Id. ¶ 49). Students allegedly began "cyberbullying" plaintiff, labeling her "one of the 'angry Black girls,'" and making unspecified "nasty racial comments against plaintiff," in addition to claiming she and the other African-American students "caused a re-election." (Id.). According to the complaint, the members of the Board were made aware of this activity but did not intervene. Around this time, two bomb threats, which defendant Lyons described "as 'pranks'" allegedly were made to the school, and plaintiff's campaign materials were torn down and shredded. (Id. ¶ 50).

Further, Enloe's school newspaper's April 2016 issue allegedly contained statements describing unspecified individuals as "illegals[ and] lowlifes," referencing "construction on 'The Wall,'" asserting that students "taking less than 5 AP classes" should "get out," advocating celebration of "White History Month," and reciting an "Enloe cockroach['s] tell[] all," all of which the newspaper's editor, defendant Trudy Price-O'Neil ("Price-O'Neil") described as "April-fools jokes." (Id. ¶ 33). The same issue allegedly contained an article regarding defendant Lyons, in which he was depicted "wearing a gold chain and tattoos" and as going by "DaLyons." (Id. ¶ 34). The article stated that "DaLyons . . . coped with surviving in Southeast Raleigh . . . as a White man," which the complaint describes as "a predominantly African-American neighborhood." (Id.).

5

Ultimately, plaintiff "reportedly did not win a seat on the [s]tudent [c]ouncil." (Id.). Relatedly, although it was initially reported that "[a]n African-American female reportedly won the Junior Class presidency," Enloe allegedly later informed the student that this was a result of an error and "that a Caucasian female student won instead." (Id. ¶ 57).

In November 2016, plaintiff's parents filed a complaint with "the Office of Civil Rights . . . in the Department of Education." (See id. ¶ 36). The complaint alleges that defendants were untruthful during the complaint process and did not provide the relevant school policies. Additionally, defendants Lyons and Danny Barnes ("Barnes"), the superintendent of the relevant area, had requested an "internal investigation" of the election, but this process is alleged to not have complied with school policy. (Id. ¶ 55). The Office of Civil Rights dismissed plaintiff's complaint.

Later, despite "anticipat[ing] an International Baccalaureate diploma upon graduation," plaintiff was told her she was ineligible because her required essay, which had been "reviewed, edited, and approved by [p]laintiff's . . . teachers/advisors," was "one point short of receiving her [International Baccalaureate] diploma." (Id. ¶ 104.). The scoring was allegedly done by "an 'unknown individual living in another country.'" (Id.). Neither Enloe nor representatives from the International Baccalaureate program followed up with plaintiff or her parents despite their requests. Also, during her senior year, "[p]laintiff was not selected for the Varsity Cheerleading Team . . . despite being a member for two . . . previous years." (Id. ¶ 107).

**COURT'S DISCUSSION**

A.    Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).[3]

B.      Analysis

Defendants argue that plaintiff fails to allege sufficient facts to support her claims and that some claims fail as matter of law. The court agrees.

1.      Proper Party to Suit

"[A] governmental entity may only be sued if the law of the state in which the court is located permits it." Smith v. Munday, 848 F.3d 248, 256 (4th Cir. 2017); see also Fed. R. Civ. P. 17(b)(3) (explaining that the "[c]apacity to . . . be sued is determined . . . for all other parties[] by the law of state where the court is located").[4] Section 115C-40 of the North Carolina General Statutes provides that "the board of education of each county in the State shall be a body corporate" and that it "shall . . . be capable of . . . defending suit . . . against the corporation." N.C. Gen. Stat. § 115C-40. In contrast, school systems are not described as cognizable legal entities. See id. § 115C-74; see also id. § 115C-36 ("All powers and duties conferred and imposed by law respecting public schools, which are not expressly conferred and imposed upon some other official, are conferred and imposed upon local boards of education. Said boards of education shall have general control and supervision of all

---

[3]      Because the court holds, herein, that plaintiff fails to state a claim, pursuant to Rule 12(b)(6), the court does not address whether plaintiff failed to effect proper service on some of the defendants, as pertinent to Rule 12(b)(5).

[4]      Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

7

matters pertaining to the public schools in their respective administrative units."). Accordingly, this court and other courts in the circuit have reasoned that the local board of education is the proper party defendant when county schools or school systems are named party-defendants. See, e.g., Dodd v. Brunswick Cty. Sch., No. 7:10-CV-101-FL, 2010 WL 3075564, at *1 (E.D.N.C. Aug. 5, 2010); E.W. v. Wake Cty. Bd. of Educ., No. 5:09-CV-198-FL, 2010 WL 1286218, at *4 n.2 (E.D.N.C. Mar. 30, 2010); Hunter v. Wake Cty. Bd. of Educ., No. 5:08-CV-62-D, 2008 WL 2695813, at *1 (E.D.N.C. July 8, 2008).

Therefore, the court finds that defendant Wake County Public School System does not have the ability to be sued as an entity under state law, and, thus, plaintiff's claims against it are dismissed.

2.      Title VI

Title VI provides that "[n]o person . . . shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Accordingly, because individuals are not programs or activities receiving federal financial assistance, the plain language of the statute suggests that individuals cannot be liable for Title VI violations. See id. § 2000d-4a (defining program or activity).

Although the United States Court of Appeals for the Fourth Circuit has not ruled definitively on the issue, see, e.g., M.D. v. Sch. Bd. of City of Richmond, 560 F. App'x 199, 200 n.1 (4th Cir. 2014); Lewis v. Amherst Cty. Sch. Bd., No. 97-2350, 1998 WL 372814, at *5 n.2 (4th Cir. June 5, 1998), the majority of federal appellate courts to consider the issue have concluded that "individuals are not liable under Title VI." Shotz v. City of Plantation, 344 F.3d 1161, 1171 (11th Cir. 2003); accord Whitfield v. Notre Dame Middle Sch., 412 F. App'x 517, 521 (3d Cir. 2011); Price ex rel. Price v. La. Dep't of Educ., 329 F. App'x 559, 561 (5th Cir. 2009); Buchanan v. City of Bolivar, 99

F.3d 1352, 1356 (6th Cir. 1996). Similarly, the Supreme Court has recognized that the comparable language of Title IX, compare 42 U.S.C. § 2000d, with 20 U.S.C. § 1681(a) ("No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."), precludes individual liability under that statutory scheme. Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257 (2009) ("Title IX reaches institutions and programs that receive federal funds . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."). In fact, Title IX "was modeled after Title VI . . . , which is parallel to Title IX except that it prohibits race discrimination, not sex discrimination, and applies in all programs receiving federal funds, not only in education programs," meaning "[t]he two statutes operate in the same manner." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998).

Accordingly, where all relevant case law indicates that Title VI does not allow for individual liability to be asserted, the court dismisses plaintiff's Title VI claims against the individual defendants, that is, defendants Sutton, Christine Kushner ("Kushner"), James Martin ("Martin"), Roxie Cash ("Cash"), Monika Johnson-Hostler ("Johnson-Hostler"), Lindsay Mahaffey ("Mahaffey"), Tom Benton ("Benton"), Bill Fletcher ("Fletcher"), Susan Evans ("Evans"), Kevin Hill ("Hill"), James Merrill ("Merrill"), Cathy Moore ("Moore"), Marvin Connelly ("Connelly"), Barnes, Rodney Trice ("Trice"), Lyons, Sawyer, Barilich, and Price-O'Neil.

In response, plaintiff cites to the Federal Court of Appeals for the Tenth Circuit's opinion in Bryant v. Independent School Disttrict No. I-38 of Garvin County, 334 F.3d 928 (10th Cir. 2003), for the proposition that "when administrators who have a duty to provide a nondiscriminatory educational environment for their charges are made aware of egregious forms of intentional discrimination and make the intentional choice to sit by and do nothing, they can be held liable under § 601" of Title VI.

9

<u>Id.</u> at 933. This isolated statement, assuming it reaches as far as plaintiff asserts, which is contrary to

the Tenth Circuit's interpretation, <u>see</u> <u>Webb v. Swensen</u>, 663 F. App'x 609, 613 (10th Cir. 2016)

("[I]ndividual employees of such entities are not liable under Title VI."), does not provide a

persuasive basis to ignore the statute's text and related federal appeals courts' interpretation thereof.

 Turning to plaintiff's remaining Title VI claim against defendant Board, the court considers

each theory of liability under the statute asserted by plaintiff in turn.

   a.   Race Discrimination

 Section 601 of Title VI, codified at 42 U.S.C. § 2000d, "prohibits only intentional

discrimination." <u>Alexander v. Sandoval</u>, 532 U.S. 275, 280 (2001).[5] Therefore, where, as here, a

Title VI claim is made on discrimination in the form of harassment or a hostile environment, (Compl.

¶ 58), intention must be shown by defendant "remaining deliberately indifferent to acts of . . .

harassment of which it had actual knowledge," meaning its "own deliberate indifference effectively

caused the discrimination." <u>Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.</u>, 526 U.S. 629,

642-43 (1999) (Title IX); <u>see</u> <u>M.D.</u>, 560 F. App'x at 204 (applying <u>Davis</u> in the Title VI context).[6]

 Thus, a statutorily covered recipient of federal financial assistance can be liable under Title

VI "for its 'deliberate indifference to known acts of [racial] harassment in its programs or activities,'

if that harassment 'is so severe, pervasive, and objectively offensive that it effectively bars the

victim's access to'" a program or activity receiving federal financial assistance. <u>Feminist Majority</u>

---

[5] <u>Sandoval</u> also held that Section 602 of Title VI, which "authorizes federal agencies 'to effectuate the provisions of [§ 601] . . . by issuing . . . regulations,'" does not "create a freestanding private right of action to enforce regulations promulgated under § 602." 532 U.S. at 293 (quoting 42 U.S.C. § 2000d-1). In so far as plaintiff's claims rely on the regulations in 34 C.F.R. part 100, (<u>see</u> Compl. at 44-47; Pl.'s Mem. Supp. Resp. (DE 69) at 17), they fail to provide a distinct cause of action. <u>See</u> <u>Sandoval</u>, 532 U.S. at 293; <u>see also</u> <u>id.</u> at 284 (explaining that for "regulations applying § 601's ban on intentional discrimination," "it is . . . meaningless to talk about a separate cause of action to enforce th[ose] regulations apart from the statute").

[6] Any claim by plaintiff relying on a theory of negligence, (<u>see, e.g.</u>, Compl. ¶¶ 97, 101), thus, fails to state a right to relief under Title VI. <u>Cf.</u> <u>Davis</u>, 526 U.S. at 642 (explaining that under Title IX's comparable prohibition on sex discrimination, the Court has "declined the invitation to impose liability under what amount[s] to a negligence standard").

Found. v. Hurley, 911 F.3d 674, 686 (4th Cir. 2018) (quoting Davis, 526 U.S. at 633) (applying Title IX); accord Fennell v. Marion Indep. Sch. Dist., 804 F.3d 398, 408 (5th Cir. 2015) (applying Davis's deliberate indifference standard to the Title VI context); Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 272-73 (3d Cir. 2014); Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 664-65 (2d Cir. 2012); Bryant, 334 F.3d at 934. The harassment must rise above the level of "simple acts of teasing and name-calling . . . even where these comments target differences in [race]." Davis, 526 U.S. at 652; Whitfield, 412 F. App'x at 521.

Specifically, in the context of "student-on-student harassment," plaintiff must show that defendant had "substantial control over both the harasser and the context in which the known harassment occurs." Feminist Majority Found., 911 F.3d at 686 (quoting Davis, 526 U.S. at 645).[7] Where "the misconduct occurs during school hours on school grounds," the defendant "retains substantial control over the context in which the harassment occurs." Davis, 526 U.S. at 646; Feminist Majority Found., 911 F.3d at 687. Similarly, in the educational context, a Title VI defendant "exercises significant control over the harasser" if "it has disciplinary authority over" the student-harasser. Davis, 526 U.S. at 646; Feminist Majority Found., 911 F.3d at 688. Yet, a covered recipient "will be liable . . . only where its 'response . . . or lack therefore is clearly unreasonable in light of the known circumstances.'" S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty., 819 F.3d 69, 77 (4th Cir. 2016) (applying Title IX) (quoting Davis, 526 U.S. at 648). Finally, "an institution is not normally liable for failing to cede to a harassment victim's specific remedial demands." Feminist Majority Found, 911 F.3d at 686.

---

[7] Although plaintiff asserts that this element does not apply to her claim, (Pl.'s Mem. Supp. Resp. (DE 69) at 28), her complaint, in support of her Title VI claim, asserts that "Title VI . . . has jurisdiction on student-on-student racial harassment," cites case law standards regarding "claims of liability arising from student-on-student harassment," and alleges instances of students' conduct aimed towards her. (Compl. ¶¶ 58, 78, 82).

Here, plaintiff fails to allege facts that give rise to a reasonable inference of harassment so severe, pervasive, and objectively offensive that it effectively barred access to Enloe's programs and activities.[8]  Not crediting her legal conclusions or bare assertions devoid of further factual enhancement, plaintiff's allegations relevant to her claim of harassment are that 1) a social media-based mock ballot omitted plaintiff's name, 2) on two occasions plaintiff's promotional campaign material was torn down or destroyed, 3) plaintiff was omitted from the March 7, 2016, junior class ballot, 4) plaintiff was subjected to general resentment from her peers and cyberbullied, and 6) the April 2016 edition of the school newspaper contained statements plaintiff alleges were racially discriminatory.  Addressing each in turn, none of these alleged events, taken as true, rise individually or together to the level of Title VI harassment to which defendant Board was deliberately indifferent.

First, as to the "mock election ballot" that omitted plaintiff's name and was posted from a Twitter account "belong[ing] to some Caucasian Student Council members," plaintiff has not pleaded sufficient additional facts or details as to raise a reasonable inference that this conduct rises to the level of severe, pervasive, and objectively offensive behavior.  (Compl. ¶¶ 30, 39).  Compare Fennell, 804 F.3d at 402-03, 409 (recounting, as sufficiently severe, multiple instances of racial slurs used by students towards an African-American student in addition to a noose being left on her car).  Further, on the facts alleged, it is unclear that this activity took place "during school hours and on school grounds" nor are there other facts from which the court could reasonably infer the requisite "substantial control over both the harasser and the context in which the known harassment occurs." Davis, 526 U.S. at 645-46; cf. Mahanoy Area Sch. Dist. v. B. L. ex rel. Levy, 141 S. Ct. 2038, 2046

---

[8]      To the extent that plaintiff raises new factual matter in her response to defendants' motion, (See, e.g., Pl.'s Mem. Supp. Resp. (DE 69) at 5-6, 10), such allegations are not properly before the court.  See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements . . . that raise new facts constitute matters beyond the pleadings . . . cannot be considered on a Rule 12(b)(6) motion.").

(2021) ("[A] school, in relation to off-campus speech, will rarely stand in loco parentis.").  This

alleged incident fails to plausibly support a claim under Title VI.

Plaintiff alleges well-pleaded facts regarding two incidents, one before the March 7 election

and one before the March 24 reelection, in which her campaign promotional materials were torn down

and shredded.  During the first instance, her materials and that of three her fellow African-American

students were torn down.  (Compl. ¶ 35, 39).  Plaintiff relies on the racial identity of the targets of

this vandalism to raise an inference that alleged conduct was on the "on the ground of race." 42 U.S.C.

§ 2000d.  However, without further details regarding the incident from which the court could make

reasonable inferences about the causal basis, the allegation that African-American students campaign

materials were torn down "is consistent with discrimination, [but] it does not alone support a

reasonable inference that the decisionmakers were motivated by bias," see McCleary-Evans v. Md.

Dep't of Transp., State Highway Admin., 780 F.3d 582, 586 (4th Cir. 2015), and leaves the court only

to "speculate to fill in the gaps." Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020).  This

fails to raise her right to relief above the speculative level.

In support of her Title VI claim, plaintiff describes the second instance of campaign material

vandalism as targeting only her and not other "Caucasian candidates[]," whose "materials remained

intact." (Compl. ¶ 50).  However, again, this is an allegation "that a certain action is potentially

consistent with discrimination," which "does not alone support a reasonable inference that the action

was motivated by bias." Bing, 959 F.3d at 618.  Accordingly, this allegation, too, fails to make

plausible a claim under Title VI.

Turning to the incident at the core of plaintiff's complaint, the omission or misplacement of

plaintiff and other African-American students' names on the March 7 ballot, plaintiff's numerous

factual allegations do not contain "facts establishing the plausibility of th[e] allegation" of a civil

rights violation. See Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 191 (4th Cir. 2010), aff'd 566 U.S. 30 (2012). Plaintiff contends that the omission was not due to "technical difficulties," "website error," or, a timely corrected ballot application mistake by plaintiff, describing this as "unlikely." (Compl. ¶ 44, 46-48). However, plaintiff's claim on this basis fails even if the court were to accept that these inconsistently proffered rationales raise an inference of conduct on the grounds of plaintiff's race, see, e.g., EEOC v. Sears Roebuck & Co., 243 F.3d 846, 853 (4th Cir. 2001) (Title VII), and that such an inference was bolstered by her allegation that "the names 4 African-American students (including [p]laintiff), 3 Asian students, 1 Jewish student, and 1 Hispanic student were left off or misplaced on the ballot." (Compl. ¶ 47). See generally Woods v. City of Greensboro, 855 F.3d 639, 650 (4th Cir. 2017) (Section 1981). This is because, even accepting the factual allegations of the complaint, no reasonable inference arises that defendant Board's "response . . . or lack therefore was clearly unreasonable in light of the known circumstances.'" S.B., 819 F.3d at 77 (4th Cir. 2016). See generally Davis, 526 U.S. at 649 ("In an appropriate case, there is no reason why courts[] on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law.")

According to the complaint, upon determination that plaintiff and others' names had been omitted or placed on the wrong ballots, that same day as the election, defendant Lyons, with the support of defendant Barnes, announced there would be a reelection along with a new campaigning period. (See Compl. ¶ 49). And plaintiff's name did, in fact, appear on the reelection ballot, although she reportedly did not win. (Id. ¶ 50). That plaintiff or her parents preferred and advocated for a re-vote rather than a new campaign followed by reelection does not make defendant Board's response plausibly clearly unreasonable because defendant's Title VI liability may not depend solely on "failing to cede to a harassment victim's specific remedial demand[]." Feminist Majority Found, 911 F.3d at 686. "[S]chool administrators are entitled to substantial deference when they calibrate a . . .

14

response to student-on-student . . . harassment." S.B., 819 F.3d at 77. The alleged fact that the decision to require a new campaign was ineffective at addressing plaintiff's concerns does not negate this conclusion because, as noted in Fennell, to which plaintiff directs the court, "[i]neffective responses . . . are not necessarily clearly unreasonable." 804 F.3d at 411.

In the aftermath of the "election incident," plaintiff alleges she was subjected to "[c]yberbulling" and the "resentment" of her fellow candidates and students generally. (Compl. ¶ 49). However, even taking these allegations as true and drawing reasonable inferences therefrom, these alleged facts to not plausibly give rise to an inference of severe, pervasive, and objectively offensive behavior. Conclusory assertions that plaintiff was "cyberbully[ied]" or bare assertions of "nasty racial comments" devoid of further factual enhancement are insufficient even at the pleading stage. (Compl. ¶ 49). Comments that plaintiff was "one of the 'angry Black girls'" were inappropriate but do not plausibly rise to a level of severe, pervasive, and objectively offensive harassment such that plaintiff's access to an educational opportunity or benefit was effectively barred.

Instead, the reasonable inference is that the comments, while unseemly, were the type of "simple acts of teasing and name-calling among school children" for which "damages are not available" "even where these comments target differences in [protected characteristics]." See Davis, 526 U.S. at 652. The same is true of the alleged "accusations in the hallway" that "Black kids caused a re-election," (Compl. ¶ 49), which were unfair and unwarranted but do not constitute the type of conduct that courts have recognized as severe. See, e.g., Doe v. Fairfax Cty. Sch. Bd., 1 F.4th 257, 275 (4th Cir. 2021) (Title IX) (explaining that, at the summary judgment stage, plaintiff's "evidence, if credited, indicate[d] that she was a victim of a serious sexual assault"); Bryant, 334 F.3d at 931 (explaining that, on plaintiff's evidence, defendant "allowed the presence of offensive racial slurs,

15

epithets, swastikas, and the letters 'KKK' inscribed in school furniture and in notes placed in African American students' lockers and notebooks").

The alleged bomb threats to the school also fail raise a reasonable inference of Title VI harassment. On the complaint, there are no factual allegations that make plausible that this conduct was "based on race, color, or national origin" as required for a Title VI claim. M.D., 560 F. App'x at 203. Temporal proximity alone, (see Compl. ¶ 50), in this context, fails to provide the court a basis from which to reasonably infer a racial motivation and instead leaves the court to "speculate to fill in the gaps" as to the motivation for the bomb threats. Bing, 959 F.3d at 618. Further, the complaint does not provide a factual basis for inferring whether the individuals making the threats were students or nonstudents, as relevant to determining whether defendant Board had control over the putative harassers. See, e.g., Feminist Majority Found., 911 F.3d at 710 (Agee, J., dissenting in part and concurring in part) ("[T]he harassing statements were anonymous and untethered to the University's geographic footprint, and thus could have been communicated by students and non-students alike.").

Finally, as to the "April 2016 edition of Enloe's newspaper, the Eagle's Eye," taking plaintiff's factual allegations regarding such as true and taking reasonable inferences therefrom, the alleged conduct does not plausibly give rise to a claim under Title VI. Although plaintiff, in conclusory manner, describes the language "in the school newspaper's articles" as "racist," (Compl. ¶ 30), review of some of these statements reveals no basis from which to reasonably infer racial bias by the writer. For example, the allegation that the paper contained the statement that an unspecified "[t]hey[,] are illegals, low-lifes" does not provide a factual basis for the court to infer who the statement was in regard to or the motivation of the declarant. (See Compl. ¶ 33). The same is true of the statement "construction on 'The Wall' will begin." (Id.). Further, while plaintiff asserts that the statement that Enloe students "taking less than 5 AP classes" should "get [their] stuff and get out" is "obviously

16

targeting African-American and Latino students," the court does not find an asserted factual basis in the complaint from which to make such an inference. (Id.).

Plaintiff also relies on three statements that, taking the allegations in the light most favorable, at least touch on race: 1) the headline "Celebrate White History Month"; 2) a "headline referring to particular Southeast Raleigh High students" as an "Enloe cockroach" that "tells all" when "Southeast Raleigh" is "a predominantly African-American Community"; and 3) an article that defendant Lyons participated in, in which he retold, in the persona of "DaLyons," of "cop[ing] with surviving in Southeast Raleigh . . . as a White man." (Compl. ¶¶ 33-34).

These allegations are insufficient to rise to the level of severe and pervasive conduct. Compare, e.g., Fennell, 804 F.3d at 409 ("[R]epeatedly being referred to by one's peers by the most noxious racial epithet in the contemporary American lexicon, and being shamed and humiliated on the basis of one's race is harassment far beyond normal schoolyard teasing and bullying."). Moreover, on the complaint, it is not reasonably inferable that this conduct effectively barred plaintiff's access to a program or activity receiving federal financial assistance, that is, that it had a "concrete, negative effect on [plaintiff's] ability to receive an education." Davis, 526 U.S. at 654. Allegations of "a mere decline in grades is [not] enough to survive a motion to dismiss." Id. at 652. Although plaintiff makes conclusory claims of "a thunderstorm of criticism, reputation damage, name-calling, threat[s], . . . harassment," a "negatively impacted . . . election outcome," "humiliation," and "anxiety," (see, e.g., Compl. ¶¶ 50, 70, 92), the facts in the complaint do not "provide[] necessary evidence of a potential link between . . . education[al]" harm and the alleged conduct in April edition of the school newspaper. Davis, 526 U.S. at 652; see also id. ("Damages are not available for simple acts of teasing and name-calling among school children.").

In sum, plaintiff's claims for Title VI harassment fail due to factual insufficiencies in the complaint, which does not allow the reasonable inference that defendant Board is liable for the misconduct alleged. As the Fourth Circuit has recognized, "<u>Davis</u> sets the bar high for deliberate indifference. . . . [A] school may not be held liable . . . for what its students do, but only for what is effectively an official decision by the school" to act in a "clearly unreasonable [manner] in light of the known circumstances." <u>S.B.</u>, 819 F.3d at 76. The court dismisses plaintiff's Title VI harassment claim against defendant Board without prejudice.

      c.     Retaliation

Plaintiff also brings a claim for retaliation violative of Title VI. Such a claim requires a "show[ing] (1) that [she] engaged in protected activity; (2) that [defendant] took a material adverse . . . action against [her;] and (3) that a causal connection existed between the protected activity and the adverse action." <u>Peters v. Jenney</u>, 327 F.3d 307, 319 (4th Cir. 2003). Retaliatory conduct is only "materially adverse" if it "suffice[s] 'dissuade[] a reasonable [person] from making or supporting a charge of discrimination.'" <u>Feminist Majority Found.</u>, 911 F.3d at 694 (quoting <u>Burlington N. & Santa Fe Ry. v. White</u>, 548 U.S. 53, 68 (2006)).

Here, the well-pleaded facts in the complaint fail to raise a reasonable inference that any conduct directed towards plaintiff was materially adverse or that it was a result of her protected activity. <u>See, e.g.</u>, <u>Feminist Majority Found.</u>, 911 F.3d at 694 (explaining that, under a comparable Title IX retaliation claim, plaintiffs "must allege that they engaged in protected activity under Title IX, and second, they must allege that — as a result of their protected activity — they suffered an adverse action attributable to the defendant educational institution"). Plaintiff's allegations of exclusion from the varsity cheerleading team, (Compl. ¶ 106), fail to include facts from which the court could reasonably infer that this was a result of any protected activity, beyond her conclusory

18

assertions of a causal connection. See Coleman, 626 F.3d at 190-91. Her assertion that an "unknown individual living in another county" scored certain essays required for her International Baccalaureate diploma below the threshold grade also fails to plead, plausibly, a causal connection between that action and any protected conduct on her part. (Compl. ¶ 104). Even accepting as true that defendant Board or its agents initially informed plaintiff that she would not be able to take part in the reelection, this, alone, does not constitute a materially adverse event where she was able to "reclaim [her] right to participate in the re-election" by reminding defendant Board that her absences were excused. (Id. ¶ 106). Finally, plaintiff's assertions of retaliation against her siblings, (See, e.g., id. ¶ 64), are inapposite to her Title VI claim, which requires "a material adverse . . . action against [her]." Peters, 327 F.3d at 319.

In sum, the complaint lacks sufficient factual matter to "permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679. Her explanation that she "did not elaborate on the retaliatory incidents . . . because they were vast and extensive," (Pl.'s Mem. Supp. Resp. (DE 69) at 16), misunderstands the relevant pleading requirements. Plaintiff is not required to "inclu[de] . . . another 100 pages to [her] [c]omplaint." Id. Rather, all that Rule 8 of the Federal Rules of Civil Procedure requires is "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which the Supreme Court has interpreted to require a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). This is not accomplished through quantity of alleged facts, but rather, through facts that raise a reasonable inference, under the pertinent law, that defendant is liable for the misconduct alleged. Id.; Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1354 (Fed. Cir. 2021) ("[I]t is the quality of the allegations, not the quantity, that matters.").

The court dismisses plaintiff's claim against defendant Board for Title VI retaliation without prejudice.

        d.       Tort Causes of Action

Plaintiff asserts negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress as bases for Title VII liability. (See Compl. ¶¶ 97-101; Pl.'s Mem. Supp. Resp. (DE 69) at 23 (clarifying that she is not bringing separate state law claims)). As noted above, any Title VI claim based on defendant Board's alleged negligence fails as a matter of law. Sandoval, 532 U.S. at 280. As to her claim of intentional infliction of emotional distress, plaintiff does not identify, and the court has not found, any authority that has recognized a separate cause of action for intentional infliction of emotional distress under Title VI outside of the liability for intentional discrimination discussed above. Therefore, the court dismisses these claims, insofar as plaintiff asserts distinct claims under these theories.

        3.       Section 1983

"Section 1983 is not itself a source of substantive rights, but rather provides a method for vindicating federal constitutional and statutory rights." Jones v. Chandrasuwan, 820 F.3d 685, 691 (4th Cir. 2016). Accordingly, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). Plaintiff cites as relevant the right to equal protection stemming from the Fourteenth Amendment.

"The Equal Protection Clause, which prohibits States from denying persons the equal protection of the laws, keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020). "[T]o state a claim for violation of the [Equal Protection] Clause, a plaintiff must plausibly allege first that he has been treated differently from others with whom he is similarly situated and that the unequal treatment

20

was the result of intentional or purposeful discrimination." Id.; Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011) ("In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus.").

        a.      Individual Defendants

"In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). This is most clearly shown where the defendant official was personally involved in the alleged deprivation. See, e.g., Garraghty v. Com. of Va., Dep't of Corr., 52 F.3d 1274, 1280 (4th Cir. 1995) (explaining that directly "causing a termination is sufficient to give rise to § 1983 liability"). Defendant officials may also be liable in their supervisory capacity where their "supervisory indifference or tacit authorization of subordinates' misconduct" was "a causative factor in the constitutional injuries they inflict." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). But see also Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").

As a preliminary matter, the complaint, beyond their reference in the caption, contains no specific allegations in regard to defendants Martin, Cash, Johnson-Hostler, Mahaffey, Fletcher, Evans, and Hill; thus, plaintiff's § 1983 claims against them are dismissed without prejudice. Further, the complaint contains no specific allegations as to defendants Sutton, Kushner, and Benton, beyond a single mention of their failure to respond to an unnamed "advocate," who "urged them to conduct a thorough investigation on the election incident." (Compl. ¶ 52). This single mention fails to

plausibly give rise to an entitlement to relief against these defendants, and, therefore, those claims are dismissed without prejudice also. The court now addresses in turn plaintiff's remaining § 1983 claims against defendants Merrill, Moore, Connelly, Barnes, Lyons, Sawyer, Barilich, and Price-O'Neil, as implicates the above theories of liability.[9]

        i.    Direct Liability

Of the 18 individual defendants named, the complaint, fairly read, only alleges personal involvement in ostensible constitutional deprivations by defendants Barilich, Price-O'Neil, Sawyer, and Lyons. However, the allegations of involvement by these defendants fail to raise a reasonable inference of discriminatory purpose in their actions. See, e.g., Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979) ("Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.").

Defendant Barilich is alleged to have been directly involved with the student election of which plaintiff complains primarily. (See, e.g., Compl. ¶¶ 11, 36, 40). However, plaintiff's allegations that defendant Barilich mishandled the election and reelection or that he falsely blamed technical difficulties are not joined by any further, relevant factual enhancement, beyond bare assertions, from which a racially discriminatory purpose or intent on the part of defendant Barilich can be reasonably inferred. See, e.g., Washington v. Davis, 426 U.S. 229, 242 (1976) (explaining that

---

[9]    Plaintiff's repeated assertion that various individual defendants relayed "falsehoods" to the Office of Civil Rights, during its review of plaintiff's claims, (see, e.g., Compl ¶ 54), is inapposite where she fails to plausibly connect these statements to any of her underlying cited causes of action. Cf., e.g., Williams v. Bolger, No. 88-1534, 1988 WL 105284, at *1 (4th Cir. Sept. 26, 1988) ("Williams further claims that the district court failed to consider his complaint that a postal supervisor had perjured himself at an EEOC hearing. The district court properly rejected this complaint as failing to state a basis for relief under Title VII or the ADEA.").

"[d]isproportionate impact . . . . [s]tanding alone" does not violate the Equal Protection Clause); Wilcox v. Lyons, 970 F.3d 452, 462 (4th Cir. 2020). The same is true in regard to defendant Sawyer's alleged failure to properly supervise and/or her mismanagement of the election. (See, e.g., Compl. ¶¶ 36, 44).

Next, plaintiff claims that defendant Price-O'Neil, as its editor, oversaw the publication of the April edition of the school newspaper that contained statements alleged by plaintiff to be "racist." (Compl. ¶ 30). However, the complaint does not allow a reasonable inference that defendant Pirce-O'Neil's conduct of editing the newspaper deprived plaintiff, personally, of any right under the Equal Protection Clause. See Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001) (describing deprivation requirement). See generally United States v. Hays, 515 U.S. 737, 743-44 (1995) ("The rule against generalized grievances applies with as much force in the equal protection context as in any other. . . . [E]ven if a governmental actor is discriminating on the basis of race, the resulting injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct."). Accordingly, either as a matter of the merits of her equal protection claim against defendant Price-O'Neil or as a matter of her Article III standing to bring such a claim, that claim by plaintiff fails. Allen v. Wright, 468 U.S. 737, 755 (1984) ("[T]he stigmatizing injury often caused by racial discrimination . . . accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct."); cf. Shaw v. Hunt, 517 U.S. 899, 904 (1996) (explaining in the context of a different category of equal protection claims that at "a plaintiff . . . lacks standing absent specific evidence that he personally has been subjected to a racial classification").

Finally, as to defendant Lyons, his personal involvement is described as his ignoring complaints by plaintiff and her parents, his appointment of defendant Barilich to oversee the student

election, and his response to the initial student election, including his representations that it was due to a technical mishap or student error and his decision to re-run the election with new campaigning. Defendant Lyons's alleged indifference to plaintiff and her parents' complaints, alone and outside of his potential supervisory liability discussed below, does not serve as a valid basis for plaintiff's equal protection claim. The same is true of his mere appointment of defendant Barilich. Finally, the complaint does not provide the requisite factual matter for the court to more than speculate that defendant Lyons had an invidiously discriminatory intent in his representations about the initial student election or in his decision to re-run the election. See, e.g., Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 819 (4th Cir. 1995) ("[E]ven when an administrative action disparately impacts members of a particular racial group, it will not be found to violate the Equal Protection Clause unless the plaintiff demonstrates that the action was motivated, at least in part, by an 'invidiously discriminatory' intent."); cf. C & H Co. v. Richardson, 78 F. App'x 894, 905 (4th Cir. 2003) (explaining that, at the summary judgement stage, plaintiff's "speculative interpretation of the [defendant's alleged bureaucratic inefficiency and] inaction, without more, is insufficient to permit an inference of intent").

In short, the complaint lacks well-pleaded facts that plausibly suggest the above defendants were personally involved in a deprivation of plaintiff's equal protection rights, and, therefore, plaintiff's § 1983 claims may not rest on such a theory on this complaint.

ii. Supervisory Liability

Pro-se plaintiff's § 1983 claims rely on what is, in essence, a theory of supervisory liability of the individual defendants for their indifference to alleged acts of racial discrimination by students. However, under Fourth Circuit precedent, plaintiff fails to state a claim for such under the facts alleged in the complaint.

24

"To state an equal protection claim for deliberate indifference to known student-on-student [racial] harassment, a plaintiff must first allege that she was subjected to discriminatory peer harassment." Cf. Feminist Majority Found., 911 F.3d at 702-03 (analyzing sexual harassment claim). "Secondly, the plaintiff must allege that the [defendant official] responded to the discriminatory peer harassment with deliberate indifference, i.e.[,] in a manner clearly unreasonable in light of known circumstances." Id. "Third, the plaintiff must allege that the school administrator's deliberate indifference was motivated by a discriminatory intent." Id.

Even if the complaint were to plausibly allege, rather than rely on speculation, that the conduct primarily complained of was on the basis of plaintiff's race, the complaint fails to include further factual enhancement as would allow are a reasonable inference that the individual, supervisory defendants' alleged indifference was, in turn, motivated by a discriminatory intent. The individual defendants' mere knowledge of alleged acts of discrimination is not enough. Iqbal, 556 U.S. at 677 (rejecting argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution"). For many of the defendants, the complaint fails to allege, sufficiently, their knowledge of "conduct that posted a pervasive and unreasonable risk" of constitutional injury, meaning that the "conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001). Further, allegations amounting to negligence by defendants in their supervision, see, e.g., (Compl. ¶ 36 (claiming that defendants Lyon and Barilich "neglected the protection of African-American candidates, including [p]laintiff, against discrimination")), are in adequate. See Baynard, 268 F.3d at 236 ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.").

Moreover, even where knowledge of repeated incidents of alleged racial discriminatory is inferable, the complaint fails to make plausible that the reason for the ostensible indifference was discriminatory in and of itself. See Coleman, 626 F.3d at 191 ([T]he complaint fails to establish a plausible basis for believing . . . that race was the true basis for [defendant's conduct]."). Although the complaint contains numerous conclusory assertions that the individual defendants engaged in impermissible discrimination, it does not contain sufficient facts from which purposeful discriminatory inaction can be inferred, which "requires more than 'intent as volition or intent as awareness of consequences.'" Iqbal, 556 U.S. at 677 (quoting Feeney, 442 U.S. at 279). Even defendants such as Barilich, Sawyer, and Lyons, which the complaint focuses on, are alleged only to be "aware of the discriminatory acts against [p]laintiff" and to have ignored plaintiff's complaints. (See, e.g., Compl. ¶ 39, 45, 51, 79, 101). However, under Iqbal, this mere knowledge of students' alleged discriminatory purpose does not plausibly plead a claim of equal protection violation, barring additional factual enhancement. See Feminist Majority Found., 911 F.3d at 703 (citing Iqbal, 556 U.S. at 676-77).

Plaintiff's complaint fails to contain sufficient factual matter accepted as true that allows the court to draw the reasonable inference that the individual defendants are liable under the relevant standards for the equal protection violations alleged.[10] Plaintiff's § 1983 claims against the individual defendants are dismissed without prejudice.

        b.        Defendant Board

Plaintiff's complaint, fairly read, asserts that defendant Board violated plaintiff's constitutional rights through its deliberate indifference to discriminatory acts against her. However,

---

[10] Because the court concludes that plaintiff has failed to allege facts sufficient to plausibly support her § 1983 claim against the individual defendants, the court does not consider whether the "complaint should survive a qualified immunity-based motion to dismiss." See, e.g., Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020).

under the relevant legal principles of constitutional liability for an entity like defendant Board, different but analogous to those discussed above, the complaint contains insufficient factual matter to state a claim to relief under § 1983 that is plausible on its face.

A government entity like defendant Board "cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978); Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 523 n.3 (4th Cir. 2000) ("[S]chool boards and municipalities are indistinguishable for purposes of § 1983."). Instead, "[a] plaintiff stating a claim via § 1983 for violation of the Equal Protection Clause by a . . . [governmental] entity must show that the harassment was the result of [governmental] custom, policy, or practice." Feminist Majority Found., 911 F.3d at 700-01. "While municipal policy is most easily found in municipal ordinances, it may also be found in formal or informal ad hoc policy choices or decisions of municipal officials authorized to make and implement municipal policy." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). Further, "official policy can be inferred from a municipality's omissions as well as from its acts." Wellington v. Daniels, 717 F.2d 932, 935-36 (4th Cir. 1983). However, "such omissions are actionable only if they constitute 'tacit authorization' of or 'deliberate indifference' to constitutional injuries." Id. at 936.

If a plaintiff alleges that a governmental entity is liable under § 1983 for the failure "to put a stop to or correct a widespread pattern of unconstitutional conduct," the "plaintiff must point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014); see also Connick v. Thompson, 563 U.S. 51, 61-62 (2011) (explaining that a "'policy of inaction' in light of notice that its program will cause constitutional violations is the

27

functional equivalent of a decision by the [entity] itself to violate the Constitution"). However, "§ 1983 liability [cannot] be inferred merely from [governmental] inaction in the face of isolated constitutional deprivations by [governmental] employees." Milligan v. City of Newport News, 743 F.2d 227, 230 (4th Cir. 1984). "[O]nly widespread or flagrant violations will" "give rise to Monell liability." Owens, 767 F.3d at 403.

Here, Plaintiff does not allege that any of the official school policies included in the complaint are themselves unconstitutional. Instead, plaintiff asserts that defendant Board has "a long history of being . . . indifferent to discrimination complaints filed on [African-American students'] behalf" and "an in-different-to-discrimination culture or custom." (Compl. ¶ 30). She further asserts that "defendant Board . . . knew or should have known about the discriminatory incidents committed against [p]laintiff" and that "by practicing [defendant Board's] indifferent-to-discrimination custom, they chose not to address the incidents." (Id.). However, as indicated in the court's Title VI analysis, the complaint fails to provide the court with more than speculation that much of the conduct was premised on plaintiff's race, meaning that it fails to raise a reasonable inference that there was a widespread pattern of unconstitutional conduct against plaintiff. Moreover, the conduct suffered by plaintiff that did, at least, inferentially reference race was not such that it constitutes flagrant constitutional violations that are required for Monell liability, absent widespread conduct. See Owens, 767 F.3d at 403.

In sum, the complaint fails to state a § 1983 claim of Monell liability based on equal protection violations by defendant Board. Plaintiff's claim, thus, is dismissed without prejudice.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss is granted (DE 64). Plaintiff's claims against defendant Wake County Public School System and her Title VI claims against the individual

28

defendants are DISMISSED WITH PREJUDICE. Her remaining claims are DISMISSED WITHOUT PREJUDICE.

Plaintiff is allowed a period of time of **30 days**, from the date of this order, to file a motion for leave to amend her complaint. Any such motion must be accompanied by a proposed amended complaint. Further, the court notifies plaintiff that any proposed amended complaint will be considered plaintiff's complaint in its entirety, and the court will not review plaintiff's prior filings to glean any misplaced claims. In the event plaintiff does not file a motion for leave to amend the complaint within 30 days of the date of this order, the clerk is DIRECTED to close this case without further order of this court.

SO ORDERED, this the 3rd day of January, 2022.

LOUISE W. FLANAGAN
United States District Judge