**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**Civil Case No. 5:21-cv-00049-FL**

| | | |
|---|---|---|
| DAVINA RICKETTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| WAKE COUNTY BOARD OF EDUCATION; | ) | |
| JAMES MERRILL, former Superintendent, in | ) | |
| his individual capacity; CATHY MOORE, | ) | |
| former Deputy Superintendent for School | ) | |
| Performance and current Superintendent, in her | ) | |
| individual capacity; MARVIN CONNELLY, | ) | |
| former Chief of Staff, in his individual | ) | |
| capacity;   DANNY BARNES, former Area | ) | **PLAINTIFF'S THIRD AMENDED** |
| Superintendent, in his individual capacity; | ) | **COMPLAINT** |
| RODNEY TRICE, former Assistant | ) | **(Jury Trial Demanded)** |
| Superintendent for Equity Affairs, in his | ) | |
| individual capacity; SCOTT LYONS, former | ) | |
| Principal of Enloe High School and current | ) | |
| Principal of Heritage High School, in his | ) | |
| individual capacity; MONICA SAWYER, | ) | |
| former Asst. Principal of Enloe High School, in | ) | |
| her individual capacity; and GEORGE | ) | |
| BARILICH, 2016 Student Council Election | ) | |
| Advisor and current Enloe teacher, in his | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

     **NOW COMES,** Plaintiff Davina Ricketts (hereinafter, "Plaintiff" and "Ms. Ricketts"),

by and through counsel, complaining of Defendants, and alleges, upon information and belief, as

follows:

## <u>NATURE OF THE CASE</u>

     1.    This case involves instances of severe and pervasive unlawful discriminatory

conduct against Plaintiff by Defendants including the deliberate indifference to racial discrimination, peer harassment, resulting in harassment to Plaintiff, Davina Ricketts. Such discrimination and harassment are underscored by covert and overt acts by Defendants, a dismissal and complicity to Plaintiff's complaints and cries for help, and an amalgamation of incidents resulting in the creation a hostile environment for Plaintiff, a then student at William G. Enloe High School of Wake County Public Schools System (otherwise referred to as "Wake County Schools" or "District"), organized under the authority of Wake County Board of Education (hereinafter "School Board").

2.       In a case of first impression, the United States Four Court of Appeals for the Fourth Circuit concluded that Plaintiff could proceed in this action (Doc. No. 86, 87), reversing this court's previous judgment (Doc. No. 77), further recognizing "the existence of a Title VI claim for student-on-student racial harassment" in violation of Title VI of the Civil Rights Act of 1964; 42 U.S.C. § 2000d. Ricketts v. Wake Cnty. Pub. Sch. Sys., WCPSS, 125 F.4th 507 (4th Cir. 2025) (otherwise referred to as the "opinion").

3.       Furthermore, the Fourth Circuit ruled that collectively, as set forth in Plaintiff's Proposed Second Amended Complaint, the allegations are: (1) sufficient to state a Title VI claim for deliberate indifference at this stage against the Board of Education; (2) sufficient to state a claim for retaliation at this stage against the Board of Education; (3) sufficient to state an equal protection claim against individual defendants Lyons, Sawyer, Barilich, Merrill, Connelly, Barnes, and Trice, Enloe faculty or administrators involved in the events around the student council election; and (4) sufficient to state an equal protection claim at this stage against the Board of Education.

4.       Adopting the Fourth Circuit's opinion, and in accordance with this court's order

(Doc. No. 93), Plaintiff now comes files this Third Amended Complaint, by and through counsel, naming the existing Defendants, permissible claims, and allowance as reflected in Plaintiff's then, pro se, Proposed Second Amended Complaint (DE 73).

5.    As set forth in the Fourth Circuit's ruling and the mandate adopted by this Court, Plaintiff submits this Third Amended Complaint, drawing the same facts alleged in Plaintiff's Proposed Second Amended Complaint, and in accordance with binding precedent establishing the parameters of Plaintiff's factual allegations set forth in this Complaint.

6.    The deliberate and malicious indifference to Plaintiff's multiple complaints of harassment, hostility, and discrimination illustrate individual and systemic failures to protect Plaintiff before, during, and after the Student Council elections in 2016. Defendants individually, officially, and collectively, violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; 34 C.F.R. § I 00, Effectuation of Title VI; and the 14th Amendment pursuant to 42 U.S.C. § 1983.

7.    As set forth below, Plaintiff suffered widespread racial discrimination, on-campus harassment, cyberbullying, death threats, retaliation, unequal and unjust treatment, damage to her reputation, loss of educational benefits and opportunities, psychological and emotional distress, and other damages as a direct and proximate result of Defendants actions and/or omissions.

8.    Plaintiff brings this action to redress violations of Plaintiff's Constitutional Rights and seeks all permissible damages because of Defendants' malicious disregard of and deliberate indifference to rights and safety Plaintiff's wellbeing.

## II. JURISDICTION

9.    This Court has original subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) and 42 U.S.C. § 1988 because the claims asserted by Plaintiffs arise under the laws

of the United States and seek redress for rights guaranteed by the United States Constitution and of state law.

10.     Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any and all North Carolina state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because (i) the events giving rise to the claim occurred in this District, and (ii) on information and belief, multiple Defendants reside within this District.

## IV. PARTIES[1]

12.     Plaintiff, Davina Ricketts, is a citizen and resident of Philadelphia County, Philadelphia, Pennsylvania[2].

13.     Defendant Wake County Board of Education (hereinafter, "Defendant Board" and "Board of Education") is a School Board governing the Wake County Public School System (hereinafter, "District" and "School District"), the largest school district in North Carolina with a student enrollment of over 160,000 in 2019 and is the recipient of federal funding for its educational programs. Defendant Board has legal responsibility to ensure the District employees follow published guidelines regarding anti-discrimination policies 1710 and 1720 (Appendix A)

---

[1] As modified by the Court's order (DE 93), Plaintiff names only Defendants that have been deemed as remaining Defendants, in their respective individual and/or official capacity, regarding the permitted claims (DE 86, 87), on remand and as set forth in this Amended Complaint to Plaintiff's *pro se* Proposed Second Amended Complaint (DE 74-1, 94).
[2] Plaintiff is a former student of the Wake County Public School System. The violations against Plaintiff's constitutional rights occurred around the 2016 Student Council elections at Enloe High School, when Plaintiff was a sophomore and a minor. The initial Complaint in this civil action was filed, *pro se*, by Plaintiff on February 02, 2021.

adopted in compliance with Title VI of the Civil Rights Act and to hold its employees, officer, agents, directors, and servants accountable for policy incompliance and/or violations of federal and state anti-discrimination law(s).

## Defendants served in their Individual Capacity

14.     Defendant James Merrill (hereinafter, "Defendant Merrill) is sued in his individual capacity as the current District Superintendent, and is named as a Defendant in this action for conduct in his official capacity during his tenure as District Superintendent 2013 to 2018 – previously serving in this capacity at or around the same time and place related to the acts/omissions, occurrences, and events leading to Plaintiff's injuries and damages. Upon information and belief, Defendant Merrill, was final decision-maker, policymaker, and is/was responsible for ensuring the training, compliance, and organizational knowledge of the District's anti-discrimination policies 1710/1720, adopted in compliance with Title VI, and providing accountability to District employees for policy violations.

15.     Defendant Marvin Connelly (hereinafter, "Defendant Connelly") is sued in his individual capacity as the former Chief of Staff for Defendant District in 2016 and served in this capacity at or around the same time and place related to the acts/omissions, occurrences, and events leading to Plaintiff's injuries and damages.

16.     Defendant Cathy Moore (hereinafter, "Defendant Moore") is sued in her individual capacity as Defendant District's Deputy Superintendent for School Performance in 2016 and served in this capacity at or around the same time and place related to the acts/omissions, occurrences, and/or events leading to Plaintiff's injuries and damages.

17.     Defendant Danny Barnes (hereinafter, "Defendant Barnes") is sued in his individual capacity as the former Central Area Superintendent Defendant District in 2016 and

served in this capacity at or around the same time and place related to the acts/omissions, occurrences, and events leading to Plaintiff's injuries and damages.

18.     Defendant Rodney Trice (hereinafter, "Defendant Trice") is sued in his individual capacity as the former Assistant Superintendent for Equity Affairs for Defendant District in 2016 and served in this capacity at or around the same time and place related to the acts/omissions, occurrences, and events leading to Plaintiff's injuries and damages.

19.     Defendant Scott Lyons (hereinafter, "Defendant Lyons") is sued in his individual capacity as the Principal at Defendant District's William G. Enloe High School ("Enloe High") where Plaintiff was subjected to multiple acts of discrimination and harassment. As Principal, Defendant Lyons was responsible for leading Enloe High, providing oversight of approximately 2,600 students in 2016, and to maintain a learning environment that protected students from hostile acts of racial harassment, bullying, retaliation, and discrimination. Defendant Lyons served in this capacity at or around the same time and place related to the acts/omissions, occurrences, and events leading to Plaintiff's injuries and damages.

20.     Defendant Monica Sawyer (hereinafter, "Defendant Sawyer") is sued in her individual capacity as the Assistant Principal at Enloe in 2016 where Plaintiff was subjected to multiple acts of discrimination and harassment. Defendant Sawyer served in this capacity at or around the same time and place related to the acts/omissions, occurrences, and events leading to Plaintiff's injuries and damages.

21.     Defendant George Barlich (hereinafter, "Defendant Barlich") is sued in his individual capacity as a teacher and employee of Defendant District's Enloe High where Plaintiff was subjected to multiple acts of discrimination and harassment. Upon information and belief, Defendant Barlich is/was the Advisor responsible for oversight regarding the 2016 Student

Council elections and was specifically appointed by Defendant Lyons for this role. Defendant Barlich served in this capacity at or around the same time and place related to the acts/omissions, occurrences, and events leading to Plaintiff's injuries and damages.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

22.     Plaintiff has properly exhausted all administrative remedies by and through a racial discrimination complaint filed with the OCR on behalf of Plaintiff and Plaintiff's parents.

## WAIVER OF IMMUNITY:
## SOVERIGN, QUALIFIED, GOVERMENTAL, OR PUBLIC OFFICIAL IMMUNITY

23.     Upon information and belief, Defendant Wake County Board of Education ("Defendant School Board") is a local board of education that is immune from suit and may not be liable in a tort action, unless the Board has duly waived its governmental immunity as provided through N.C. Gen. Stat. § 115C-42.

24.     Upon information and belief, pursuant to N.C. Gen. Stat. § 115C-42, Defendant School Board waived its governmental immunity by the purchase of liability insurance, thereby waiving immunity from liability caused by the actions or tort of any agent or employee of the board of education when acting within the course and scope of his/her authority or within the course of his/her employment.

25.     It is undisputed that Defendants James Merrill, Cathy Moore, Marvin Connelly, Danny Barnes, Rodney Trice, Scott Lyons, Monica Sawyer, George Barilich (collectively referred to as "Individual Defendants") – named in their respective individual capacity– are current or former employees, agents, directors, or officials acting within course and scope of their employment and/or authority with Defendant School Board.

26.     To the extent that Individual Defendants may claim governmental or public official

immunity regarding Plaintiff's section 1983 and punitive damages claims, Individual Defendants are not entitled to public official immunity for actions within the course and scope of their employment or authority if the acts were done so with malice.

27. A Defendant acts with "malice" and thus may be subject to punitive damages, when he/she wantonly does that which a person of reasonable intelligence would know to be contrary to his/her duty and which he/she intends to be prejudicial or injurious to another.

28. Under North Carolina law, "Willful' or "Wanton" conduct, means the means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. N.C. Gen. Stat. § 1D-5(7).

29. As set forth in Plaintiff's factual allegations below, Individual Defendants conduct amounted to "malice" or "wanton" conduct as evidence in Defendants deliberate indifference to the rights and safety of Plaintiff regarding racial discrimination and racial harassment. To the extent that Individual Defendants conduct constitutes "malice," those Defendants are also not entitled to governmental or public official immunity in addition the aforementioned waiver of such immunity by the purchase liability insurance.

30. Individual Defendants are employees and/or agents of Defendant School Board or Wake County Public School System ("WCPSS" or "District"), which bears legal responsibility under state law for the acts and omissions of the District's employees undertaken in the course of their employment. Defendant School Board is responsible for the appointment, training, supervision, promotion, compliance, accountability, oversight and discipline of supervisory directors, officers, school administrators, and teachers, including the individually named defendants herein.

31.     Individual Defendants are not entitled to qualified immunity for Plaintiff's Fourteenth Amendment violations and § 1983 claims as Defendants, named in their individual capacity because these Defendants:

   a.   (1) committed constitutional violations of Plaintiff's Fourteenth Amendment rights under the Equal Protection Clause, resulting in injuries to Plaintiff; and

   b.   (2) the rights violated were clearly established in that Plaintiff was entitled to equal protection under the law from racial discrimination, harassment, hostility, and unfair treatment.

## **FACTUAL BACKGROUND**[3]

32.     In accordance with this court's order, Plaintiff hereby alleges the factual allegations drawn from Plaintiff's Proposed Second Amended Complaint (DE 74-1; 94) to the extent as modified or allowed by this court (DE 93) in accordance with the United States Court of Appeals for the Fourth Circuit's opinion (DE 86, 87).

33.     In February 2016, Davina Ricketts was a sophomore at William G. Enloe High School ("Enloe"), a Raleigh, North Carolina high school part of the Wake County Public School System, which is governed by the Wake County Board of "Board").

34.     Student council elections were approaching at Enloe and were scheduled to be held on March 4, 2016. Scott Lyons, Enloe's school principal, appointed George Barilich, an English teacher, to oversee the election. Monica Sawyer, Enloe's assistant principal, was tasked with assisting Barilich with the elections.

35.     Barilich delegated some of his election oversight responsibilities to student council

---

[3] Plaintiff hereby adopts, re-alleges, incorporates by reference with the same force and effect, the factual allegations accepted by the Fourth Circuit's opinion citing Plaintiff's Proposed Second Amended Complaint and the Joint-Appendix submitting during the Parties' briefs (DE 86,87) and this court's order (DE 93).

members, including the receipt of candidacy applications and input of candidate names on the ballots online.

36.     All students interested in a student council position were directed to submit a candidacy application to a student council member. Ricketts submitted a timely application declaring her candidacy for junior class vice president. Over a hundred students declared their candidacy to become a student council member as well, including three Black sophomore students.

37.     On February 29, 2016, the student council vice president emailed over 100 potential candidates, including Ricketts, to confirm the students' names and the offices for which they were running, and included a request for any corrections that were necessary.

38.     The next day, Ricketts, upon realizing she had accidentally applied to run in the sophomore class election, instead of the junior class election, immediately emailed the student council vice president to correct her candidacy application. In an email to Lyons, Barilich stated the student council vice president had made the correction to Ricketts' candidacy application.

39.     The campaign period ran from March 1 to March 3, 2016. During this time, multiple social media accounts were created on Twitter, now known as X, by student council members purporting to be representing Enloe[4].

40.     The Twitter accounts posted polls, which prompted Twitter viewers to indicate which candidate they intended to vote for, as well as posts promoting student council candidates.

41.     Ricketts and the three other Black sophomore students were excluded from all the polls and posts. After Ricketts and the three other Black sophomore students "spoke out" about the Twitter posts, the accounts were ultimately taken down.

---

[4] Plaintiff's Proposed Amended Complaint included students "X, Y, and Z" as unidentified African-American students participating in the Enloe Student Council Election and were similarly situated to Plaintiff's allegations of racial animus, hostility, and harassment. Those unidentified students are not Parties in this action.

42.     Additionally, Ricketts described the exclusion to the student council vice president, who apologized on behalf of the entire student council but nonetheless denied that members of the student council were involved in the Twitter account polls and posts.

43.     Additionally, and simultaneously, campaign materials including posters and promotional bookbag-tags that belonged to Ricketts and the three other Black sophomore students were defaced, ripped, and thrown throughout the Enloe building.

44.     No white students had any of their campaign materials defaced, ripped, or thrown throughout the Enloe building.

45.     The "huge amounts of trash produced by the shredding of [Ricketts'] promotional materials" and the materials of the three other Black sophomore students could not be "missed by anyone" and were in "shared areas that administrators walked by every day." Lyons, Sawyer, and Barilich were aware of these discriminatory acts, but did nothing to address the situation.

46.     On March 4, 2016, six hours after the student council election voting was supposed to take place, the student council vice president emailed all candidates and reported technical difficulties with the voting website.

47.     Hours later, Barilich provided a different interpretation for the delay, and stated it was due to Enloe's failure to make a payment to the website used for hosting the election. Barilich subsequently purchased a new website to be used for hosting the election. Accordingly, the student council elections were postponed from March 4 to March 7, 2016. A student council member was tasked with creating the new candidate list and ballot.

48.     On March 7, 2016, the new date of the student council elections, Ricketts saw that her name, as well as the names of the other three Black sophomore students, did not appear on the junior class election ballot.

49.     Ricketts reported this exclusion to Sawyer and Barilich, stating the exclusion "look[ed] like discrimination." Sawyer and Barilich "did not comment" on Ricketts' statement and refused to talk to the other Black candidates who were excluded. Sawyer did, however, communicate to Ricketts that her name appeared on the sophomore ballot. Ricketts explained that while she originally applied for candidacy in the sophomore class election by mistake, she corrected her mistake via email, and in an email to Lyons, Barilich stated that the student council vice president had made the correction.

50.     Soon after, Barilich informed the student election candidates that some candidates had been excluded from the ballot due to "miscommunication between [the] two websites" and that the original website was "malfunctioning."

51.     Contrary to Barilich's claims, a source from the original website reported they had not been contacted by Enloe regarding any malfunctioning issues, and Enloe had not created any ballots on the website in 2016. This "false" statement by Barilich "marked the start of the consequential racial harassment against" Ricketts.

52.     That same day, Ricketts' parent called Lyons, but neither he nor Sawyer returned the call. Additionally, Ricketts' parent, along with others, contacted the District Superintendent James Merrill's office to request a meeting and to report "the discriminatory act," but Merrill refused to meet. Ricketts' parent also emailed Lyons, asking for a meeting.

53.     Lyons responded to Ricketts' parent, claiming that nine students had been left off the ballot or put on the wrong ballot, but otherwise refused to meet. Instead, Lyons summoned Ricketts and the eight other students to his office and informed them they were left off the ballot "due to something wrong with the website plus 'some oversight'" issues.

54.     Later that same day, Lyons, with the support of Danny Barnes, the District's Central

Area Superintendent, announced that a new election would take place on March 24, 2016, seventeen days later. All candidates were directed to repeat the entire qualifying and three-day campaign process, and Barilich and student council members would remain in charge of the second election.

55.    Ricketts was the only Black student out of the four Black students who were excluded from the ballot to re-declare her candidacy for the election on March 24, 2016.

56.    Starting over the election process angered many students. On March 8, 2016—the day after the election was postponed—a student who was frustrated by the re-election requirement made a bomb threat at Enloe. Lyons dismissed the bomb threat as a "prank."

57.    Additionally, during this time, many disgruntled students, along with some of their parents, "immediately" started cyberbullying Ricketts by labeling her as one of the "angry Black girls" and blaming Ricketts for "wrongly overreacting to a 'technical glitch' and calling it discrimination." Enloe students would whisper about Ricketts and the three other Black sophomores in class, and others posted hostilities to their personal Twitter accounts. Allegations were also spread that Black students could not run for student council because their GPAs were too low.

58.    As Ricketts started campaigning for reelection, her promotional materials were again destroyed, while the promotional materials of white candidates remained intact. This, paired with the recent bomb threat, made Ricketts fearful to attend school.

59.    The school district "had control over the student harassers" and could have pursued disciplinary action, as the school district pursued such action in 2017 when three students were "suspended . . . for sharing a private video with other students in which the three made 'derogatory statements against different ethnic and racial groups.'"

60.     On March 8, 2016, Ricketts' mother also emailed Marvin Connelly, Chief of Staff for the Wake County Public School System, and copied Merrill, Barnes, and Lyons, stating Black students were "currently being blamed for the restart of the entire process" and were being "targeted for anger over something they did not cause[.]" That same day, Ricketts' mother emailed Lyons and copied Barnes, Connelly, and Merrill expressing similar frustrations with Black students being harassed at Enloe and the desire for Enloe to "address expectations of equality."

61.     On March 9, 2016, the local news outlet ran a story regarding the Enloe student council election, in which Ricketts' mother, and the mother of another excluded Black student, were interviewed. Ricketts' mother and the other mother stated, amongst other things, "they believe the color of their children's skin" led to the ballot exclusion, despite the school district's claim that "it was human error." The mothers showed the news outlet "an email exchange with Enloe principal Scott Lyons" regarding the ballot exclusion, "where [Lyons] wrote this was 'obviously a mistake.'"

62.     On the local news outlet's website, dozens of anonymous online commenters disparaged the students and their parents and wrote race-based, derogatory remarks; for example, that Black kids' dads were not in the picture, the administration covers for mistakes of Black kids; and Black people were "better off" during segregation.

63.     In a letter from Lyons dated March 1, 2016, but postmarked with a March 11, 2016, date, Ricketts' parents were informed Ricketts had accrued 15 days of absences, and therefore, did not qualify to participate in certain extra-curricular activities, including the student council election.

64.     Ricketts' parents had to explain these were excused absences that were documented with medical notes to reclaim Ricketts' right to participate in the election. This treatment varied

from that of a white student at Enloe, who was allowed to remain on student council despite being suspended in 2016 and was permitted to run for reelection in the same election as Ricketts without issue.

65.    On March 11, 2016, Ricketts' mother emailed Lyons, Barnes, Connelly, and Merrill, expressing frustration that she had not received a response regarding ballot exclusion, and stating Ricketts "and others involved [were] being harassed" and "You have a racial divide on your hands[.]"

66.    On March 14, 2016, a civil-rights advocate and a local NAACP leader contacted Enloe administrators and urged them to conduct a thorough investigation on the ballot exclusion incident, but such requests were ignored.

67.    On March 15, 2016, Lyons responded to the March 11, 2016, email sent by Ricketts' mother. Specifically, Lyons stated that nine students had been left off the ballot, not just the four Black students.

68.    Lyons also explained that he met with Ricketts and the eight other students to say the same and apologize for the ballot errors. Finally, Lyons wrote, "In one of your emails you stated that your daughter and others are being harassed. I have not received any reports of harassment – please ask [Ricketts] and the others to come see me or another administrator to discuss this so that we can follow up."

69.    On March 17, 2016, Enloe faced a second bomb threat by another student. As with the first instance, Lyons dismissed the bomb threat as a "prank."

70.    On March 18, 2016, Ricketts' mother responded to Lyons' March 15, 2016 email. Specifically, Ricketts' mother expressed frustration regarding, among other things, the fact Lyons "[failed] to inquire and address the racial tension, comments, and harassment," and that he would

"expect any student to confront [him] instead of vice versa."

71.    Lyons "deliberately ignored and continued to ignore the repeated racial harassment against [Ricketts] online and on campus and the multiple complaints from [Ricketts'] parent and failed to intervene."

72.    Additionally, during the reelection period, Ricketts, an "A" student, sought "letters of academic reference" from two teachers for a summer abroad medical program application. Both teachers refused. One teacher stated that she "didn't feel like" writing a letter of academic reference, despite doing so for a white peer. Another teacher stated Ricketts should have asked for a letter of academic reference in- person, instead of submitting a written request. One of these teachers ignored Ricketts when Ricketts greeted her in the hallway after Ricketts became known "to the school body and staff" as the "angry Black girl" who "made a big deal out of nothing."

73.    Moreover, during the election period, the April edition of the Enloe school newspaper was published, and was riddled with racial stereotypes and derogatory remarks toward minority students.

74.    The paper was overseen by its editor, Trudy Price- O'Neil, an Enloe teacher, who "condoned" the "mostly" white students' articles and "labeled the contents as just jokes." More than one article parodied the events of the student council election—in one, a cockroach named Dee D. Roach from Southeast Raleigh, a predominately Black neighborhood, "tells all," and said their kind were "drastically underrepresented in student government," announced their campaign for student council, and said they must get to work making their promotional bookbag tags.

75.    Another article concerned "the recent uproar and confusion surrounding the alleged lack of representation at the Oscars." The article went on to say the Black Entertainment Television awards were "the real culprits of exclusion" and the "sanity and sobriety" of those making

discrimination claims should be questioned.

76.     Elsewhere, the paper advertised "White History Month," the student council president expressing their need to "build a wall," and Lyons "participat[ing]" in an interview for a profile piece and describing how he "coped" as a White man in Southeast Raleigh, and how he "raps" about all the ill treatment experienced as such a minority.

77.     The election occurred on March 24, 2016, and Ricketts was unsuccessful in winning a seat on the student council. Despite the fact student council elections were over, Ricketts continued to experience racial harassment at Enloe and was "called and regarded as the 'angry Black girl' who irrationally made a big deal out of a simple 'error' and caused 100 candidates' hardship.

78.     Such racial harassment also impacted Ricketts' physical health and mental well-being. Ricketts had multiple incidents of fainting one of which caused a concussion and subsequent "difficulties to engage in schoolwork and properly learn in class." Ricketts also suffered from anxiety, emotional distress, suicidal thoughts, and a sudden and drastic drop in grades in some classes.

79.     Following the student council election, Ricketts was not reselected for the varsity cheerleading team. Though she had been on the team for two years, the coach selected a junior varsity student in her place.

80.     In addition, Ricketts anticipated an International Baccalaureate diploma upon graduation in 2018, but was "informed about the ineligibility after submitting an essay previously reviewed, edited, and approved by [Ricketts'] IB teachers/advisors prior to submission." Ricketts was "informed the essay was one point short of receiving her IB Diploma" despite receiving passing grades in weighted courses.

81. Additionally, Ricketts was "pinned in an honorary ceremony, but never given such a diploma." Ricketts' parents "reached out to the International IB Ombudsman, who initially reported they would investigate the matter, but ended up ceasing all communication and referred [Ricketts] to contact Enloe."

82. Other than summarily stating Ricketts' essay was scored by an "unknown individual living in another country[,]" Enloe never provided any further reason for the outcome.

83. Ricketts continued to experience a hostile environment at Enloe until 2018, her graduation date.

84. In May 2016, Lyons, Connelly, and Barnes "appointed" Assistant Superintendent for Equity Affairs Rodney Trice to conduct an "internal investigation" into the March 2016 election errors.

85. During his investigation, Trice took statements from at least three students who described the racial name-calling, destruction of campaign materials, and harmful rumors about Black students. Ricketts "did not participate" in the investigation and Trice "did not interview" the parents of the impacted students.

86. In a "previous phone call with [Ricketts' mother], Trice said that he sympathized with her frustration with Enloe administration's indifference to discrimination" but nonetheless stated "he wore 'two hats.'" After that call, Trice "stopped responding to her inquiries." The outcome of the internal investigation is unclear, as no investigative report was ever provided.

87. The Board of Education (the "Board") had a policy of "disregard[ing] discrimination" and "dismiss[ing] discrimination complaints" for "many years[,]" and, as a result of such discrimination, Legal Aid of North Carolina filed "numerous discrimination complaints" with the Department of Justice and the Office of Civil Rights (otherwise referred to as "OCR").

88.     In addition, there has been "public outcry" due to "discrimination against African American students."

89.     For example, at a June 2016 Board meeting, Shirley Tang, a civil rights advocate for students, informed the Board of the cyberbullying against Ricketts and the other three Black sophomore students, the "hardship" posed by repeating the campaign process, and how previous complaints about discrimination had been ignored. No one responded at the time.

90.     Later, when "discussing the issue of indifference to discrimination and the ineffectiveness of resolution that [Ricketts] and other minority students faced" some Board members stated, "that's just the culture."

## CLAIMS FOR RELIEF[5]

### FIRST CLAIM OF RELIEF
### Deliberate indifference and violation of
### Title VI of the Civil Rights Act of 1964:
### – against Defendant Board

91.     Plaintiff hereby incorporates by reference herein all preceding Paragraphs of the Complaint.

92.     Title VI of the Civil Rights Act of 1964 provides, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

93.     The Fourth Circuit recognizes the existence of Title VI claims for student-on-student racial harassment.

---

[5] This court's order (DE 93) determined Plaintiff's Proposed Second Amended Complaint (DE 73) sufficiently stated claims for: (1) deliberate indifference under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ("Title VI") against defendant Wake County Board of Education (the "Board"); (2) retaliation under Title VI against the Board; and (3) Equal Protection violation against the Board, and individually named defendants.

94.    It is undisputed that, at all times relevant in this action, Plaintiff, Davina Ricketts, was a student at an educational institution receiving federal funds – specifically Enloe High School and Wake County Public School System.

95.    As set forth above, Plaintiff they suffered racial harassment that was so severe, pervasive, and objectively offensive that it deprived them of equal access to the educational opportunities or benefits provided by their school.

96.    As a result of the racial harassment that Plaintiff suffered, the school, through an official who has authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment.

97.    Furthermore, the school acted with deliberate indifference to the alleged harassment. [end of claim – add damages portion to final paragraphs].

## SECOND CLAIM OF RELIEF
### Retaliation in violation of Title VI of the Civil Rights Act of 1964–
### against Defendant Board of Education

98.    Plaintiff hereby incorporates by reference herein all preceding Paragraphs of the Complaint.

99.    Pursuant to Title VI of the Civil Rights Act of 1964, Plaintiff shows that she suffered retaliation, in the following ways:

    a.  (1) Plaintiff engaged in a protected activity;

    b.  (2) Plaintiff's school took a material adverse action against her, and

    c.  (3) a causal connection existed between Plaintiff's engaging in protected activity and the adverse action.

100.    Plaintiff was engaged in a protected activity when she opposed an unlawful practice of harassment and discrimination at Enloe High, which is direct evidence that Plaintiff reasonably

believed that this was occurring to her, and other students.

101.    Plaintiff's internal complaints to school administration, District leadership, and the OCR Complaint collectively evidence Plaintiff's opposition ballot exclusion based on discrimination, along with the events surrounding her campaign and other racial hostility is evidence of Plaintiff opposing what she reasonably believed was an unlawful practice.

102.    Following Plaintiff's opposition to what she believed was unlawful racial discrimination and engagement in protected activity, Plaintiff's school -- by and through Enloe High School administrators identified above as Defendants Lyons, Sawyer, and Barilich -- took a material adverse action against her.

103.    Plaintiff contends and alleges herein that the adverse action of cyberbullying occurred "immediately" after she objected to ballot exclusion on the basis of discrimination and the election was re-scheduled. The aforementioned letter to Ms. Ricketts' parents likewise followed immediately on the heels of her original complaint. As evidence above, there is a clear causal connection existed between the protected activity and the adverse action.

### THIRD CLAIM OF RELIEF
**Fourteenth Amendment, Equal Protection claim and
Deprivation of Rights – 42 U.S.C. § 1983 – against
Defendant Board of Education and Defendants Merrill,
Moore, Connelly, Barnes, Trice, Lyons, Sawyer, and
Barilich, in their individual capacity**

104.    Plaintiff hereby incorporates by reference herein all preceding Paragraphs of the Complaint.

105.    The Fourteenth Amendment's Equal Protection Clause provides, in relevant part, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. Furthermore, 42 U.S.C. § 1983 "provides a method for vindicating" one's Fourteenth Amendment rights when violated and/or deprived.

106.    For purposes of liability for a deprivation of Plaintiff's Constitutional Rights under § 1983, Plaintiff recognizes that a municipality or local county agency, such as Defendant Board of Education, is not a "person" for purposes of §1983 liability. However, Defendant Board of Education is being sued directly for damages under Monell regarding Plaintiff's Equal Protection – Fourteenth Amendment – deliberate indifference claims.

107.    Specifically, Defendant Board of Education is liable for a §1983 equal protection claim based upon Plaintiff's racial harassment was the result of a municipal custom, policy, or practice and actions ratified by final decision-makers of Wake County Board of Education.

108.    Defendant Board, through its acts and omissions, became an instrument or architect of racial discrimination and racial harassment through a systemic practice of conducting itself in a manner that showed a deliberate indifference to legitimate claims of racial harassment, hostility, retaliation, and discrimination. Instead creating a safe educational space for Plaintiff, a then high school student at Enloe, Defendant Board and its' municipal officials authorized the racial harassment while knowing that Plaintiff complained of being targeted, excluded, demeaned, and humiliated.

109.    The actions and omissions of Defendant Board and its' officials – the Superintendent, Deputy Superintendent for School Performance, Chief of Staff, Area Superintendent, Assistant Superintendent for Equity Affairs, and other Enloe administrators or teacher(s) – demonstrate a deliberate indifference to legitimate claims by Plaintiff as she cried out for help, protection, and safety. Unbeknownst to Plaintiff, the very officials responsible for creating a safe learning environment for students like her, became the architects of a pernicious culture of racial harassment, hostility, and humiliation.

110.    In addition to an Equal Protection §1983 claim against Defendant Board, Plaintiff

also seeks to hold Individual Defendants -- Lyons, Sawyer, Barilich, Merrill, Connelly, Barnes, Trice, and Enloe faculty or administrators -- liable for actions and omissions resulting their respective deliberate indifference to racial harassment and discrimination of Plaintiff and her resulting injuries.

111.    The Individual Defendants, knew of discriminatory peer-to-peer harassment, were deliberately indifferent to Plaintiffs complaints, and their deliberate indifference was motivated by a discriminatory intent. The events surrounding the 2016 student council election and retaliatory aftermath demonstrate this deliberate indifference by the Individual Defendants.

112.    Plaintiff, Davina Ricketts, was subjected to discriminatory peer harassment as reflected in the exclusion of Plaintiff and other African-American female junior class candidates from the 2016 Student Council Election; the subsequent destruction of Plaintiff's campaign materials while her White counterparts were not subjected to the same harassment and intimidation; and racial slurs and or epithets directed at her following the Student Council Election and re-election.

113.    Defendants Lyons and Sawyer, as the school administrator(s), responded to the discriminatory peer harassment with deliberate indifference, (i.e. in a manner clearly unreasonable in light of known circumstances). This is evidenced in Defendant Lyons' blatant and deliberate attempts to deflect attention from what was occurring to Plaintiff, victim-blame Plaintiff after she was excluded, failed to provide oversight to a school-issued or sponsored newspaper that directly targeted Plaintiff and published racial hostility to Plaintiff and other racial minorities at Enloe High.

114.    Defendants Lyons and Sawyer, the school administrator's deliberate indifference was motivated by a discriminatory intent in the following ways:

a.  Defendant Lyons is liable in that he:

    i.  "ignore[d] . . . the repeated racial harassment against [Ricketts] both online and on campus and the multiple complaints" from her mother;

    ii.  downplayed the ballot exclusion by stating it was a "mistake" or related to "some oversight" issues;

    iii.  stated he had "not received any reports of harassment"; and

    iv.  "participate[d]" in the April edition of the Enloe school newspaper that was riddled with racial stereotypes.

b.  Defendants Sawyer and Barilich were "aware of the discriminatory acts, but did nothing to address the situation" and refused to talk to Ricketts or the other African-American candidates who were excluded.

c.  Defendants Merrill, Connelly, and Barnes, failed to meet to discuss the racial harassment, and/or failed to respond to her parent's numerous emails following up about said harassment.

d.  Defendant Trice, as Assistant Superintendent for Equity Affairs, stated that he "sympathized" with Plaintiff's mother's "frustration with Enloe administration's indifference to discrimination" but nonetheless stated he wore "two hats" and, subsequently, "stopped responding" to her mother's calls about harassment.

115.  Defendants, individually and collectively, have either blatantly ignored or "sought to downplay the harassment" she experienced and "made no effort to stop" it – amounting to a deliberate indifference that was motivated by a discriminatory intent.

116.  It is undisputed that Defendants Merrill, Moore, Connelly, Barnes, Trice, Lyons,

Sawyer, and Barilich – who named in their individual capacity – were also acting officially, within course and scope of their authority or employment, and their official acts are essentially against Defendant Board of Education[6].

117.    Plaintiff's "harassment was the result of municipal custom, policy, or practice."

118.    "an official policy can be inferred from a municipality's omissions as well as from its acts" and "such omissions are actionable . . . if they constitute 'tacit authorization' of or 'deliberate indifference' to constitutional injuries."

119.    Plaintiff was subjected to racial discrimination and indifference to discrimination that has been described by some Board members stated, "that's just the culture."

120.    Defendant WCPSS and the Board have been subject to "public outcry" due to "discrimination against African American students" and "numerous discrimination complaints."

121.    Plaintiff has cited and submitted articles showing public outcry, numerous discrimination, and culture of racial discrimination and/or indifference to racial discrimination by the Board of Education.

### <u>PUNITIVE DAMAGES 42 U.S.C. §1983</u>
**Reckless, Callous, and/or Malicious intent or indifference to the federally protected rights and safety of Plaintiff – against all Defendants**

122.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

123.    Defendants' conduct, as alleged above, violated Plaintiff's federally protected rights and are actionable under 42 U.S.C. § 1983. Pursuant to section 1983, punitive damages can arise from conduct involving reckless or callous indifference to the federally protected rights of

---

[6] This court's order (DE 93 ¶¶ 1, 3) states: "the Board, Merrill, Moore, Connelly, Barnes, Trice, Lyons, Sawyer, and Barilich remain defendants; and "Accordingly, where plaintiff states an equal protection claim against defendant Board, all claims against school faculty and administrators Merrill, Moore, Connelly, Barnes, Trice, Lyons, Sawyer, and Barilich in their official capacities necessarily are DISMISSED as duplicative."

others, or if the Defendants' conduct was motivated by evil intent.

124.    Section 1983 is derived from § 1 of the Civil Rights Act of 1871, 17 Stat. 13. It was intended to create "a species of tort liability" in favor of persons deprived of federally secured rights[7].

125.    Upon information and belief, Plaintiff has not alleged common law tort claims for negligence or gross negligence against Defendants in her Proposed Second Amended Complaint (DE 74), and in compliance with this court's order (DE 93). However, in addition to Defendants' conduct amounting to "deliberate indifference," Plaintiff further asserts that the same conduct rises to the level of "malicious intent" or "reckless and callous indifference."

126.    Upon information and belief, Plaintiff's claims for punitive damages are supported by clearly established law regarding section 1983. The common law allows recovery of punitive damages in tort cases not only for actual malicious intent, but also for reckless indifference to the rights of others. Neither the policies nor the purposes of § 1983 require a departure from the common-law rule[8].

127.    Defendants Lyons, Sawyer, Barilich, and Trice (collectively "Individual Defendants"), are sued in their individual capacity for the acts and omissions alleged above regarding a deliberate indifference to racial discrimination and harassment, resulting in Plaintiff's injuries.

128.    Upon information and belief, Defendant Wake County Board of Education ("Defendant Board"), by and through its' individually named employees, officials, directors, and agents, is sued as a State Agency, duly organized as a local school board under the laws of North Carolina. Defendant Board is recognized in the same manner as a municipality for purposes of §1983 liability, organized under the laws of the State of North Carolina.

---

[7] Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) See also Carey v. Piphus, 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978); Imbler v. Pachtman, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976).
[8] Robinson v. Best, 689 F. Supp. 3d 147, 163-65 (E.D.N.C. 2023); quoting Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

129.    At all times relevant in this action, Defendants Lyons, Sawyer, Barilich, and Trice (collectively "Individual Defendants"), had a duty to act reasonably under the circumstances and to provide a safe learning environment free from racial harassment, discrimination, bullying, retaliation, and danger to students' safety, such as Plaintiff.

130.    In addition to actions manifesting a deliberate indifference, Individual Defendants conducted rises to the level of "malice" or "reckless or callous" in that their subsequent failures to provide oversight and protection to prevent injuries to Plaintiff were .

131.    Individual Defendants were further malicious, reckless, or callous in the following ways:

a.  Consciously disregarded Plaintiff's complaints of racial harassment, intimidation, cyberbullying, discrimination, and exclusion by her peers during the 2016 student council election and failed to properly address or adjudicate;

b.  Maliciously permitted content that was published with ill-will, disguised as "satire" and repeatedly failed to supervise students in the publication of the Eagle Eye newspaper -- specifically the April 2016 edition that directly and indirectly targeted Plaintiff, other African-American students, and minorities in a series of racial epithets, slurs, and humiliating tactics that brought reasonable fear, anxiety, apprehension, and feelings of being unsafe to Plaintiff.

c.  Recklessly and callously failed to comply with Federal and State Law outlawing discrimination of students based on race.

d.  Created a hostile learning environment through their actions, inaction, and omissions.

e.  Failed to properly investigate or adjudicate Plaintiff's concerns of racial

harassment, demonstrating a deliberate indifference to the Constitutional Rights of Plaintiff and school safety.

132.    Defendants Merrill, Moore, Connelly, Barnes, Trice, Lyons, Sawyer, and Barilich – who named in their individual capacity – acted with a malicious, reckless, or callous disregard for the safety and federally protected rights of Plaintiff.

133.    The actions or omissions of Defendants Merrill, Moore, Connelly, Barnes, Trice, Lyons, Sawyer, and Barilich were committed during their official duty or within the course and scope of their employment and authority of their employer -- Defendant Wake County Board of Education (otherwise referred to as "WCPSS").

134.    In the alternative, Defendant Board of Education, as the principal for its agents and other similarly situated officers, is responsible under respondeat superior for the injuries caused by the acts and omissions alleged herein; Individually named Defendants acted within the course and scope of his employment in the acts and omissions alleged herein.

135.    Defendant Board of Education, by and through its agents, was conceived in the spirit of mischief or incomprehensible indifference to civil obligations, and is variously liable for the actions of its' agents -- resulting in Plaintiff being deprived of her rights under the Fourteenth Amendment Equal Protection Clause.

136.    As a direct and proximate result of the malicious, reckless, or callous indifference shown by Defendant Board, through its officers, Plaintiff suffered constitutional injuries as she was racially discriminated against, subjected to racial harassment, and suffered physical, emotional and pecuniary damages.

137.    As a direct and proximate result of Defendants' actions, Plaintiff suffered injuries and damages.

138.    Defendant Board of Education is permitted by state law and, on information and belief, has elected to pay any final judgment against an employee that results from an act done or omission made in the scope and course of his or her employment with Defendant Board.

139.    Upon information and belief, Defendants acted with a deliberate indifference to Plaintiff, amounting to "malice" and/or "reckless or callous" conduct. Therefore, the Defendants' conduct evidences a conscious and intentional disregard of and indifference to the rights or safety of others, which Defendants knew or should have known, was reasonably likely to result in injury, death, damage, or other harm.

140.    Upon information and belief, Individual Defendants conduct amounted to "malice" or "wanton" conduct as evidence in Defendants deliberate indifference to the rights and safety of Plaintiff regarding racial discrimination and racial harassment. To the extent that Individual Defendants conduct constitutes "malice," those Defendants are also not entitled to governmental or public official immunity in addition the aforementioned waiver of such immunity by the purchase liability insurance.

141.    Upon information and belief, Defendants acted maliciously and recklessly or with deliberate indifference and disregard for the reasonable treatment or safety of Plaintiff by being subjected to a hostile learning environment propelled by racial peer-harassment and discrimination. Such actions were either motivated by evil intent or manifest a callous indifference to Plaintiff.

142.    As a direct proximate result of the actions, inaction, and omissions of Defendants, Plaintiff sustained damages and will continue to sustain damages in the future, including but not limited to the following:

        a.      Physical and emotional injuries;

b.    Past and future pain and suffering;

c.    Past and future medical expenses; and

d.    Such other damages as may be shown at trial.

143.    As a direct and proximate result of constitutional and personal injuries, Plaintiff is entitled to recover from the Defendants, jointly and severally, compensatory damages.

144.    Defendants' actions were  malicious, and/or reckless with a conscious and intentional disregard for and a deliberate indifference to the rights or safety of others, specifically Plaintiff, and to all others similarly situated.

145.    As a direct and proximate result of Defendants' willful, wanton, and reckless conduct, Plaintiff is entitled to recover Punitive Damages in an amount to be determined at trial, pursuant to 42 U.S.C §1983.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and order relief as follows:

A.    Compensatory damages against all Defendants, jointly and severally;

B.    Punitive damages against the individual Defendants, jointly and severally;

C.    Pre-judgment and post-judgment interest and recovery of costs, as well as reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and any other applicable laws;

D.    Any other and further relief the Court deems equitable and just.

## VII.  JURY DEMAND

Plaintiff respectfully demands a trial by jury of all issues in this matter so triable pursuant

to Federal Rule of Civil Procedure 38(b).


Respectfully submitted this the 3rd day of June 2025.

**LAW OFFICES OF JAMES SCOTT FARRIN**
***Counsel for Plaintiff***

/s/ Coleman M. Cowan
Coleman M. Cowan (N.C. Bar No. 21997)
Law Offices of James Scott Farrin
555 S. Mangum Street, Suite 800
Durham, North Carolina 27701
Telephone: (919) 688-4991
Facsimile: (919) 688-4468
E-mail: ccowan@farrin.com

/s/ Nichad Davis
Nichad Davis (N.C. Bar No. 56297)
Law Offices of James Scott Farrin
555 S. Mangum Street, Suite 800
Durham, North Carolina 27701
Telephone: (919) 688-4991
Facsimile: (919) 688-4468
E-mail: ndavis@farrin.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing ***PLAINTIFF'S THIRD AMENDED COMPLAINT*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant:

> Stephen G. Rawson
> Neal Ramee
> 150 Fayetteville Street, Suite 1800
> Post Office Box 1151
> Raleigh, NC 27602-1151
> 919-821-4711
> Fax: 919-829-1583
> Email: srawson@tharringtonsmith.com
> Email: nramee@tharringtonsmith.com
> *Counsel for Defendants*

This 3rd day of June 2025.

> **LAW OFFICES OF JAMES SCOTT FARRIN**
> *Counsel for Plaintiff*
>
> /s/ Coleman M. Cowan
> Coleman M. Cowan (N.C. Bar No. 21997)
> Law Offices of James Scott Farrin
> 555 S. Mangum Street, Suite 800
> Durham, North Carolina 27701
> Telephone: (919) 688-4991
> Facsimile: (919) 688-4468
> E-mail: ccowan@farrin.com
>
> /s/ Nichad Davis
> Nichad Davis (N.C. Bar No. 56297)
> The Law Offices of James Scott Farrin
> 555 South Mangum Street, Suite 800
> Durham, North Carolina 27701
> Telephone: 919-688-4991
> Facsimile: 919-688-4468
> E-mail: ndavis@farrin.com